UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
UNITED STATES OF AMERICA,

v. 24 CR 19 (AT)

KARREM NASR,

Plea

Defendant.
------------------------------x

New York, N.Y.
January 27, 2025
4:00 p.m.

Before:

HON. ANALISA TORRES,

District Judge

APPEARANCES

DANIELLE R. SASSOON
United States Attorney for the
Southern District of New York
BY: CAMILLE FLETCHER
KIMBERLY RAVENER
STEPHEN RITCHIN
Assistant United States Attorneys

TAMARA GIWA
Federal Defenders of New York, Inc.
Attorney for the Defendant
BY: ANDREW J. DALACK
NEIL KELLY

(In open court)

THE COURT: Good afternoon. Please be seated.

We are here in the matter of United States v. Karrem. Please make your appearances

MS. FLETCHER: Good afternoon, your Honor.

Camille Fletcher, Kimberly Ravener and Stephen Ritchin for the United States.

MR. DALACK: Good afternoon, Judge.

Andrew Dalack and Neil Kelly from the Federal Defenders of New York on behalf of Karrem Nasr. We're also joined by several members of Mr. Nasr's family in the audience.

THE COURT: On January 24 of this year, the Court received a call from a person who identified herself as a family member of the defendant inquiring whether the Court would provide a live audio stream of today's proceedings. Under Federal Rules of Criminal Procedure 53, the Court is prohibited from broadcasting judicial proceedings from the courtroom. Accordingly, and unfortunately, today's proceeding will not be live streamed.

I would like to remind members of the public that they are prohibited from photographing or otherwise recording this hearing.

Mr. Nasr, I'm told that you want to change your plea and enter a plea of guilty, is that right?

THE DEFENDANT: Correct.

THE COURT: Before deciding whether to accept your guilty plea, I'm going to ask you some questions. It's very important that you answer my questions honestly and completely. The purpose of these proceedings is to make sure that you understand your rights, to decide whether you're pleading guilty of your own free will, and to make sure that you're pleading guilty because you are guilty and not for another reason. You understand?

THE DEFENDANT: Yes.

THE COURT: Mr. Ballesteros, please swear the defendant.

(Defendant sworn)

THE COURT: Mr. Nasr, you understand that you are now under oath, and if you answer any of my questions falsely, you may be prosecuted for the separate crime of perjury. You understand?

THE DEFENDANT: Yes.

THE COURT: How old are you?

THE DEFENDANT: 24 years old.

THE COURT: You said 24?

THE DEFENDANT: Correct.

THE COURT: How far did you go in school?

THE DEFENDANT: I finished my high school diploma.

THE COURT: And didn't you study in college, some college?

THE DEFENDANT: I accrued some credits, but I didn't finish my degree.

THE COURT: Okay. So how far did you get?

THE DEFENDANT: About 50 something credits.

THE COURT: So how much time was that that you spent in college?

THE DEFENDANT: It took me several years. A couple years I was in college.

THE COURT: And where was that?

THE DEFENDANT: One semester at Rowan University and the remainder at Mercer County Community College.

THE COURT: Would you say the first one again?

THE DEFENDANT: Rowan University. It's spelled R-O-W-A-N in Glassboro, New Jersey.

THE COURT: Have you ever been treated or hospitalized for mental illness?

THE DEFENDANT: I've been treated for mental illness but not hospitalized.

THE COURT: And what was the diagnosis?

THE DEFENDANT: Autism spectrum disorder.

THE COURT: What was the nature of the treatment?

THE DEFENDANT: Throughout my schooling, I received special education services and like additional counseling services.

THE COURT: And does your condition affect your

ability to understand what is happening today in this courtroom?

THE DEFENDANT: No, your Honor.

THE COURT: Are you now or have you recently been under the care of a doctor or psychiatrist?

THE DEFENDANT: No, your Honor.

THE COURT: Have you ever been addicted to drugs or alcohol?

THE DEFENDANT: No.

THE COURT: Have you taken any drugs, medicine or pills or drunk any alcoholic beverages in the last 24 hours?

THE DEFENDANT: I'm sorry, could you repeat that again, please.

THE COURT: Have you taken any drugs, medicine or pills, or drunk any alcoholic beverages in the last 24 hours?

THE DEFENDANT: No, your Honor.

THE COURT: Is there any medication that you're supposed to being taking that you did not take?

THE DEFENDANT: No, your Honor.

THE COURT: Is your mind clear today?

THE DEFENDANT: Yes, your Honor.

THE COURT: You understand what's happening in this proceeding?

THE DEFENDANT: Yes.

THE COURT: Mr. Dalack, have you discussed this matter

with your client?

MR. DALACK: I have, your Honor.

THE COURT: Does he understand the rights that he would be giving up by pleading guilty?

MR. DALACK: He does, your Honor.

THE COURT: Is he capable of understanding the nature of these proceedings?

MR. DALACK: Yes.

THE COURT: Does either attorney or any of the attorneys have any doubt as to Mr. Nasr's competence to plead at this time?

MS. FLETCHER: The government has no doubt as to the defendant's competence, your Honor.

MR. DALACK: No, your Honor.

THE COURT: Based on Mr. Nasr's responses to my questions, my observations of his demeanor here in court, and the representations of counsel, I find that Mr. Nasr is fully competent to enter an informed plea of guilty at this time.

Mr. Nasr, have you received a copy of the indictment in this case?

THE DEFENDANT: Yes.

THE COURT: And, by the way, what were you studying in college?

THE DEFENDANT: Business administration.

THE COURT: And did you read the indictment?

THE DEFENDANT: Yes.

THE COURT: Do you want me to read it to you now in open court or do you waive its public reading?

MR. DALACK: Your Honor, we'll waive its public reading.

THE COURT: You understand, Mr. Nasr, that you're charged with one count of attempting to provide material support and resources to a designated foreign terrorist organization in violation of Title 18, United States Code, Sections 2339(b), 3238 and 2.

THE DEFENDANT: Yes, your Honor.

THE COURT: Have you had enough time and opportunity to discuss your case with your attorneys?

THE DEFENDANT: Yes.

THE COURT: Have you discussed with them the charges and any possible defenses you might have to the charges?

THE DEFENDANT: Yes, your Honor.

THE COURT: Have you discussed with your attorneys all the facts about your involvement in this matter?

THE DEFENDANT: Yes.

THE COURT: Have your lawyers told you the consequences of pleading guilty?

THE DEFENDANT: Correct.

THE COURT: Are you satisfied with your attorneys representation of you?

THE DEFENDANT: Yes.

THE COURT: I am now going to explain certain constitutional rights that you have. These are rights that you will be giving up if you enter a guilty plea. Please listen carefully to what I'm about to say, and if you don't understand something, stop me, and your attorneys or I will explain the matter more fully.

Under the Constitution and laws of the United States, you have a right to plead not guilty to the charges in the indictment. You understand?

THE DEFENDANT: Yes.

THE COURT: If you did plead not guilty, you would be entitled to a speedy and public trial by a jury. Do you understand?

THE DEFENDANT: Yes.

THE COURT: At the trial, you would be presumed to be innocent, and the government would be required to prove you guilty beyond a reasonable doubt before you could be found guilty. That means you would not have to prove that you were innocent, and you could not be convicted unless a jury of 12 people agreed unanimously that you're guilty beyond a reasonable doubt. You understand?

THE DEFENDANT: Yes.

THE COURT: At the trial, and at every stage of your case, you would be entitled to be represented by a lawyer. And

if you could not afford one, one would be appointed at public expense, free of charge to represent you. You understand?

THE DEFENDANT: Yes, your Honor.

THE COURT: During a trial, the witnesses for the prosecution would have to come to court and testify in your presence where you could hear and see them, and your lawyer could cross-examine them. And if you wanted, your lawyer could offer evidence on your behalf. You would be able to use the Court's power to compel witnesses to come to court to testify in your defense even if they did not want to come. You understand?

THE DEFENDANT: Yes.

THE COURT: At trial, you would have the right to testify if you wanted to, but you would also have the right not to testify. And if you chose not to testify, that could not be used against you in any way. No inference or suggestion of guilt could be drawn from the fact that you did not testify. You understand?

THE DEFENDANT: Yes.

THE COURT: If you were convicted at trial, you would have the right to appeal that verdict to a higher court. You understand?

THE DEFENDANT: I understand.

THE COURT: As I said before, you have the right to plead not guilty. Even right now even as you sit here for the

purpose of entering a guilty plea, you have the right to change your mind, persist in your not guilty plea, and go to trial. But if you do plead guilty, and I accept your plea, you will be giving up your right to trial and the other rights that I have just described. If you plead guilty, there will be no trial. All that will remain to be done is to impose sentence. I will enter a judgment of guilty and sentence you on the basis of your guilty plea after considering whatever submissions I get from you, your lawyer, and the government, as well as a presentence report prepared by the probation department. You understand?

THE DEFENDANT: Yes.

THE COURT: If you plead guilty, you will also have to give up your right not to incriminate yourself because I will ask you questions about what you did in order to satisfy myself that you are guilty as charged. Do you understand?

THE DEFENDANT: Yes.

THE COURT: You understand each and every one of these rights?

THE DEFENDANT: Yes.

THE COURT: You're willing to give up your right to a trial and the other rights that I have just described?

THE DEFENDANT: That's correct.

THE COURT: I understand that you intend to plead guilty to Count One of the indictment, attempted provision of

material support or resources to a designated foreign terrorist organization, is that right?

THE DEFENDANT: Yes.

THE COURT: AUSA Fletcher, would you please state the elements of the offense in question?

MS. FLETCHER: Yes, your Honor.

The elements of attempting to provide material support or resources to a designated foreign terrorist organization in violation of 18 U.S.C., Section 2339(b) are as follows:

1. The defendant had the intent to commit the crime of providing material support or resources to a designated foreign terrorist organization, and

2. The defendant engaged in conduct amounting to a substantial step towards the commission of that crime.

The government must also prove by a preponderance of the evidence that venue is proper in the Southern District of New York.

**The elements of the crime of providing material support or resources to a foreign terrorist organization are:**

1. The defendant knowingly provided material support or resources to a foreign terrorist organization.

2. That the defendant knew that the organization was a designated terrorist organization, or that the organization had engaged or was engaging in terrorist activity or terrorism.

3. One of the following jurisdictional requirements

must also be met:

First, the defendant is a national of the United States or a permanent resident alien.

Second, the defendant is a stateless person whose habitual residence is the United States.

Next, after the conduct required for the offense occurred, the defendant was brought into the United States or found in the United States even if the conduct required for this offense occurred outside the United States.

Fourth, the offense occurred in whole or in part within the United States.

Fifth, the offense occurred in or affecting interstate or foreign commerce.

Finally, the defendant aided or abetted any person over whom jurisdiction exists under 18 United States Code, Section 2339B(d), and committed an offense under 18 United States Code, Section 2339B(a), or conspired with any person over whom jurisdiction exists under 18 United States Code, Section 2339B(d) to commit an offense under 18 United States Code, Section 2339B(a).

THE COURT: Mr. Nasr, you understand that if you were to go to trial, the government would have to prove all of those elements beyond a reasonable doubt, except for venue, which it would need to prove by a preponderance of the evidence?

THE DEFENDANT: Yes.

THE COURT: Now, I'm going to tell you about the maximum penalties. The maximum penalty means the harshest punishment that could possibly be imposed if you proceed with your guilty plea or are convicted at trial.

It doesn't mean this is what you necessarily will receive, but you have to understand that by pleading guilty, you are exposing yourself to the possibility of receiving any combination of punishments up to the maximums that I'm about to describe.

First, with regard to your liberty, the maximum term of imprisonment for this crime is 20 years, which can be followed by a lifetime of supervised release. Supervised release means that if you're sentenced to prison, after you're released, you'll be subject to supervision by the probation department. There will be rules of supervised release that you will have to follow, and if you violate the rules, you can be returned to prison without a jury trial to serve additional time even beyond your original sentence. You understand?

THE DEFENDANT: Yes.

THE COURT: You should also understand that parole has been abolished in the federal system, and if you're sentenced to prison, you will not be released early on parole, although there may be limited opportunities to earn credit for good behavior. You understand?

THE DEFENDANT: Yes.

THE COURT: In addition to these restrictions on your liberty, the maximum punishment also includes certain financial penalties. The maximum allowable fine is $250,000 or twice the gain you received from the crime or twice the loss to any victims, whichever is greater.

I'm also required to impose a mandatory special assessment of $100.

The indictment also includes a forfeiture allegation which I will read to you now.

As a result of planning and perpetrating a federal crime of terrorism against the United States as defined in Title 18 United States Code Section 2332B(g)(5), and as alleged in Count One of the indictment, you shall forfeit to the United States pursuant to Title 18 United States Code, Section 981(a)(1)(G), and Title 28, United States Code, Section 2461, all right, title and interest in all assets, foreign and domestic, all right, title, and interest in all assets, foreign and domestic, acquired and maintained with the intent and for the purpose of supporting, planning, conducting, and concealing a federal crime of terrorism against the United States, United States citizens and residents and their property, and all right, title, and interest in all assets, foreign and domestic, derived from or involved in and used and intended to be used to commit a federal crime of terrorism against United States, citizens and residence of the United States and their property;

including, but not limited to, a sum of money representing the value of the property just described as being subject to forfeiture.

You understand that these are the maximum penalties for the offense charged in Count One?

THE DEFENDANT: Yes.

THE COURT: In imposing sentence, federal judges are required to consider the recommendations of the Federal Sentencing Guidelines. The guidelines are a complicated set of rules for determining an appropriate sentence. Judges must pay attention to the Sentencing Guidelines in determining a sentence, but in the end the judge is required to give the sentence that she believes best satisfies the purposes of the criminal law, even if that is higher or lower than the guidelines recommendation.

Have you discussed the Sentencing Guidelines with your attorneys?

THE DEFENDANT: Yes.

THE COURT: And do you understand that the guidelines are only recommendations to the Court?

THE DEFENDANT: Yes.

THE COURT: You understand that if your attorneys or anyone else has attempted to predict what your sentence will be, that their prediction could be wrong?

THE DEFENDANT: I understand.

THE COURT: I am asking you this because no one, not your attorney, nor the prosecutor, not even I, can be sure what your sentence will be because that sentence cannot be determined until I receive the presentence report from the probation department and until I have decided what is the correct calculation of the guidelines range and whether there is any basis for not following that recommendation.

Even if your sentence is different from what your attorneys or anyone else has predicted, even if it's different from what you expect, once you have pleaded guilty, you will not be allowed to withdraw your plea. Do you understand?

THE DEFENDANT: Yes, your Honor.

THE COURT: Please understand also that I'm just telling you about the punishments that are part of the sentence. Being convicted of a felony, even if by a plea of guilty, may have other consequences.

Are you a United States citizen?

THE DEFENDANT: Yes.

THE COURT: How did you become a United States citizen?

THE DEFENDANT: By birth.

THE COURT: The reason that I ask whether you are a United States citizen is because if you are not a citizen, your conviction may have consequences with respect to your ability to remain in the United States. You will be bound by your

guilty plea regardless of these immigration consequences and regardless of any advice you've received from your counsel or others regarding any immigration consequences.

If you are indeed a U.S. citizen, as a result of your guilty plea, you may also lose certain valuable civil rights to the extent that you have them now, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm. Do you understand?

THE DEFENDANT: I understand.

THE COURT: I understand that there is no plea agreement in this case, is that right?

MR. DALACK: That's correct, your Honor.

THE COURT: Mr. Nasr, has anyone made any promise or offered you any inducement to plead guilty?

THE DEFENDANT: No.

THE COURT: Has anyone threatened, bribed, or forced you to plead guilty?

THE DEFENDANT: No.

THE COURT: Has anyone made a promise to you as to what your sentence will be?

THE DEFENDANT: No.

THE COURT: Now that you've been advised of the charge against you, the possibility penalties you face, and the rights that you're giving up, is it still your intention to plead guilty to Count One, attempted provision of material support or

resources to a designated foreign terrorist organization in violation of Title 18, United States Code, Sections 2339B, 3238 and 2?

THE DEFENDANT: Correct.

THE COURT: So with respect to Count One of the indictment, how do you plead?

THE DEFENDANT: Guilty.

THE COURT: Now tell me in your own words why you believe that what you did makes your guilty of the charge in the indictment.

THE DEFENDANT: From November to December 2023, I attempted to provide myself as personnel to al Shabaab with the intention to work under its direction or control. In December 2023, I boarded a plane from Egypt to Kenya where I thought someone could put me in contact with al Shabaab. At the time I knew that al Shabaab was engaged in terrorist activity, including the unlawful use of weapons with the intent to endanger the safety of others. I am very sorry.

THE COURT: So when you say that you attempted to provide yourself as personnel, what do you mean by that?

THE DEFENDANT: I was volunteering to work under them.

THE COURT: And when you did these things that you just described, did you know that what you were doing was wrong and illegal?

THE DEFENDANT: Correct.

THE COURT: Does the government want me to put any additional questions to Mr. Nasr?

MS. FLETCHER: No, your Honor.

THE COURT: Would the government summarize what its evidence would be were Mr. Nasr to go to trial.

MS. FLETCHER: Yes, your Honor.

First, as to the jurisdictional requirement under 18 United States Code, Section 2339B, the government would move that -- would prove that requirement by demonstrating that the defendant at the time of the offense was a U.S. national. The government would establish that venue is proper here in the Southern District of New York by a preponderance of the evidence, and it would do so by establishing that the defendant was first brought to the Stewart Airport here in the Southern District of New York.

The government's evidence at trial would include the following: The defendant's social media post showing his support for terrorism and terrorist acts, testimony from the confidential source about communications between that source and the defendant, where the defendant expressed his commitment to terrorism and his intent to engage in jihad against America, the defendant's messages between the source and others across multiple different messaging applications where the defendant is seen seeking out members of terrorist organizations, including al Shabaab, as well as other terrorist organizations.

Those messages would demonstrate that the defendant was motivated by the events of October 7, 2023 to wage jihad against America, and that the defendant's purpose for traveling to Kenya was to join al Shabaab to wage jihad against America and its allies and to obtain military training from al Shabaab in support of al Shabaab's terrorist activities, as well as to provide services such as translation services for al Shabaab.

The government would also have at trial the defendant's travel records, including flight and hotel, itineraries, the Kenyan visa that the defendant obtain that would demonstrate that the defendant did in fact travel from Egypt to Kenya to join al Shabaab.

The government would also have items, some of the items seized at the time of the defendant's arrest, including military-style boots that were purchased specifically for training with al Shabaab.

The government would also proffer or would also have as evidence at trial the defendant's post arrest statement where the defendant reiterated that he was motivated to engage in jihad because of the events of October 7, 2023, and that he was not afraid to die for his jihadist cause, and that he knew al Shabaab was in fact a terrorist organization that was engaged in violence, and that the purpose for his travel to Kenya was to join al Shabaab and engage in terrorist activities with them.

THE COURT: Do the attorneys agree that there is a sufficient factual predicate for a guilty plea?

MS. FLETCHER: Yes, your Honor.

MR. DALACK: We agree there is a sufficient factual predicate, your Honor, though I expect at sentencing we are going to characterize some of the communications differently than what the government provided today.

THE COURT: Does the defense know of any valid defense that would prevail at trial?

MR. DALACK: No, your Honor.

THE COURT: Does any attorney know of any reason that I should not accept Mr. Nasr's plea of guilty?

MS. FLETCHER: No, your Honor.

MR. DALACK: No Judge.

THE COURT: Mr. Nasr, because you knowledge that you are in fact guilty as to Count One of the indictment, because I'm satisfied that you know of your rights, including your right to go to trial, and that you're aware of the consequences of your plea, including the sentence which may be imposed, and because I find that you are knowingly and voluntarily pleading guilty, I accept your guilty plea and enter a judgment of guilty on Count One of the indictment.

The probation department will want to interview you in connection with a presentence report that it will prepare.

Does defense counsel wish to be present for any

interview in connection with the report?

MR. DALACK: Yes, your Honor.

THE COURT: So I direct that there shall be no interview unless counsel is present.

Mr. Nasr, if you choose to speak to the probation department, make sure that anything that you say is truthful and accurate. I will read the report carefully. It is important to me when I'm deciding what sentence to impose. You and your lawyer have a right to examine the report and comment on it at the time of sentencing.

I urge you to read it and discuss it with your lawyer. If there are any mistakes in it, point them out to your lawyer so that he can bring them to my attention.

Sentencing in this matter is set for June 30, 2025 at 10:00 a.m.

The government shall provide the probation officer with its factual statement within seven days.

Defense counsel must arrange for the defendant to be interviewed by the probation department within the next two weeks.

The defense submissions are due by June 9, and the government's submissions are due by June 16.

Are there any further applications?

MS. FLETCHER: Not as to the plea, your Honor, but I do have one thing to flag for the Court.

A couple hours ago the parties filed a joint motion to adjourn the CIPA Section 2 conference that's scheduled for next week. The parties are planning to meet and confer this week, actually tomorrow about that, and hope to obviate the need for potential further litigation. And we also in that motion also asked to adjourn the briefing deadline. The government has a deadline tomorrow for briefing on the issue. So we just wanted to -- even though we only filed it moments ago, but wanted to bring that to the Court's attention.

THE COURT: All right. Yes, I will adjourn the briefing deadline, and we can adjourn the planned conference. When can you let me know whether you have reached an agreement?

MS. FLETCHER: We propose to file something by next week, February 3, your Honor, which is the same date that the conference was scheduled, to let the Court know whether we need further proceedings or not.

THE COURT: Anything further from the defense?

MR. DALACK: Not on that point, your Honor. We're hoping in light of the defense's CIPA 5 notice, we can resolve the issues with the government and propose a plan for the Court as to how it should incorporate the materials disclosed in a classified setting for the purpose of sentencing.

THE COURT: That brings our plea hearing to a close. I will look forward to your letter on February 3.

MR. DALACK: Thanks, Judge. If I could ask if the

marshals think there is enough time for Mr. Nasr to have three or four minutes to speak briefly with his family before he's taken back to the MDC.

THE COURT: Yes, I would like him to be allowed to speak with his family.

MS. FLETCHER: Thank you, Judge.

(Adjourned)